# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

| | |
|---|---|
| JANET WORKMASTER, | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) |
| v. | ) |
| | ) **Case No. 6:19-cv-02036-PGB-GJK** |
| C. R. BARD, INC. and BARD | ) |
| PERIPHERAL VASCULAR, INC., | ) |
| | ) |
| *Defendants.* | ) |

## DEFENDANTS' RESPONSE MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S OMNIBUS MOTION *IN LIMINE*

Defendants C. R. Bard, Inc. and Bard Peripheral Vascular, Inc. (collectively, "Bard") respectfully submit this Memorandum in Opposition to Plaintiff's Omnibus Motion *in Limine* ("Motion") [DE 130].

### Introduction

Plaintiff summarily asks this Court to exclude evidence on fourteen separate topics, largely on relevance and prejudice grounds and with little explanation or argument in support of her position. In filing a motion *in limine*, the moving party bears the burden of proving to the trial court that a specific piece of evidence should be excluded. *Action Nissan, Inc. v. Hyundai Motor America*, No. 6:18-CV-380-WWB-EJK, 2021 WL 2633820, at *1 (M.D. Fla. June 25, 2021). If Plaintiff claims the proposed evidence lacks relevance, she needs to demonstrate ***why***. If she wishes to exclude evidence as unacceptably prejudicial, she must show ***how*** the possible probative effects are ***substantially*** outweighed by the *unfairly* prejudicial effect on her case. *Sorrels v. NCL*

1

*(Bahamas) Ltd.*, 796 F.3d 1275, 1285 (11th Cir. 2015) ("[t]here is a difference between unfairly prejudicial evidence, which may be excluded under Rule 403, and evidence that is 'simply adverse to [an] opposing party.'"). In applying Rule 403, courts must "look at the evidence in a light most favorable to admission, maximizing its probative value and minimizing its undue prejudicial impact." *Aycock v. R.J. Reynolds Tobacco Co.*, 769 F.3d 1063, 1069 (11th Cir. 2014) (quoting *United States v. Alfaro–Moncada*, 607 F.3d 720, 734 (11th Cir. 2010)).

Here, the Court's ability to evaluate Plaintiff's motion in *limine* is frustrated by her failure to present arguments with any specificity. Rather than identify specific documents or expected testimony for exclusion, Plaintiff seeks to exclude entire categories of evidence by invoking nothing more than general maxims. Plaintiff fails to meet her burden, and her unsupported Motion should be denied in its entirety.

Moreover, Plaintiff asks this Court to ignore many rulings in the MDL, which have already been entered in this case. On December 6, 2019, this Court formally "adopt[ed] the Orders entered in the" MDL, [DE 23 at ¶ 1] which address many of the issues Plaintiff raises here. Where they apply, this Court should adopt those rulings.

Further, Plaintiff's relevance arguments ignore the scope of the remaining claims—and the necessary elements of those claims—and Bard's defenses in this case. Plaintiff's remaining claims are design defect, failure to warn, and punitive damages [DE 104][1].

---

[1] Bard's Motion for Summary Judgment as to all remaining claims is pending and fully briefed. [DE 58]; [DE 125]; [DE 93].

<u>**Relevant Legal Standards**</u>

In considering a motion *in limine*, courts must "look at the evidence in a light most favorable to admission, maximizing its probative value and minimizing its undue prejudicial impact." *Aycock v. R.J. Reynolds Tobacco Co.*, 769 F.3d 1063, 1069 (11th Cir. 2014) (quoting United States v. Alfaro–Moncada, 607 F.3d 720, 734 (11th Cir. 2010)). "The real purpose of a Motion *In Limine* is to give the trial judge notice of the movant's position so as to avoid the introduction of damaging evidence which may irretrievably effect the fairness of the trial. A court has the power to exclude evidence *in limine **only*** when evidence is ***clearly inadmissible on all potential grounds***." *Id.* (emphasis added) (quoting *Luce v. United States*, 469 U.S. 38, 41 (1984)). Fed. R. Evid. 403 permits a district court to exclude relevant evidence when "its probative value is ***substantially*** outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, needlessly presenting cumulative evidence." (emphasis added).

## 1. ANY REFERENCE TO ADVERTISING FOR IVC FILTER CASES BY ANY PLAINTIFF'S ATTORNEYS IS RELEVANT AND ADMISSIBLE HERE.

Bard has already stipulated that it will not refer to advertising specifically by Plaintiff's counsel in this case. [DE 112 at ¶ 1(A)]. Plaintiff now requests this Court exclude relevant evidence, testimony, and argument relating to ***any*** attorney advertising for IVC filter cases by any attorneys. This information is relevant in this case and Plaintiff has opened the door because she specifically stated that she did ***not*** have "any concerns" about her filter ***prior to seeing attorney advertisements on television***.

Given Plaintiff's testimony, the question is: which came first—the alleged problem with the filter or the attorney advertising? While Plaintiff cites *Johnson v. C.R. Bard Inc.*, No. 19-CV-760-WMC, 2021 WL 2070448, at *7 (W.D. Wis. May 24, 2021), *Johnson* did not involve a plaintiff who specifically admitted that she had no concerns prior to seeing attorney advertisements, as Plaintiff has in this case. Here, this matter is directly relevant to Plaintiff's motivation for filing suit, the anxiety she attributes to her Filter, and related causation; accordingly, Bard is entitled to question her about this at trial. Plaintiff's Motion should be DENIED.

## 2. REFERENCES TO PLAINTIFF'S EXPERTS DESIGNATED OR CALLED IN OTHER CASES BUT NOT IN THIS CASE

Plaintiff's Motion should be denied to the extent it applies to certain non-testifying experts. Given the joint nature of the opinions and reports in this case, including joint reports on which Dr. Allen (Plaintiff's case-specific expert) relied,[2] Bard must be allowed, if circumstances require, to cross-examine and offer evidence at trial regarding any relevant experts' statements and explanations of the opinions in joint reports. To prohibit this would strip Bard of its right to fully cross-examine Plaintiff's experts and provide the jury with the fullest understanding of Plaintiff's experts' opinions. Plaintiff does not show how such references are irrelevant, how the vaguely-alleged harm to her would substantially outweigh the probative value of such evidence, or why an objection at trial would be insufficient to address her concerns.

---

[2] *See* Jan. 4, 2021 Robert P. Allen, MD Medicolegal Expert Report – List of Reliance Materials at 2, attached as Exhibit A.

The MDL Court expressly denied this motion, and this Court has already done the same in expressly adopting the MDL rulings. MDL DE 10947 at pp. 8–9, § D (denying motion to exclude reference to experts retained in other litigation); DE 17-11; DE 23 at ¶ 1. Plaintiff's Motion should be DENIED.

## 3. ANECDOTAL TESTIMONY

Plaintiff seeks to exclude any and all reference to testimony or argument related to whether (A) a witness, the witness's friend or family member has been injured by or died as a result of a thrombus or pulmonary embolism ("PE") and/or (B) filters saving lives or catching clots or of individuals dying of PE because they did not have a filter.[3]

Although Plaintiff asserts claims against Bard, her claims are based upon the alleged acts or omissions of Bard employees, some of whom will be witnesses at trial. Plaintiff's claims hinge upon Bard employees' knowledge of alleged risks associated with Bard IVC filters and alleged disregard and concealment of those risks. Plaintiff's claims put the conduct and credibility of Bard's employees—who, in many cases, have dedicated years of their lives to designing, testing, and monitoring the safety of Bard's IVC filters—squarely at issue. Without pointing to any specific prejudice, Plaintiff seeks to deprive Bard's employees of the opportunity to defend themselves against her accusations that they knowingly concealed certain risk information in disregard for the health and safety of the public. The public includes the Bard employees' friends and

---

[3] Section 3(c) of Plaintiff's Motion seeks to limit evidence "[t]hat an attorney or witness would get an IVC filter or recommend one to family/friends." As to this limited section, the Parties have entered into a stipulation and this matter is moot. See [DE 112 at page 2, ¶ 3(A)].

families. The witnesses' personal experience, or that of friends and family, with the serious medical conditions at issue (thrombus or PE), is directly relevant to the witnesses' knowledge of the benefits of the IVC filters. Likewise, the fact that some witnesses may have recommended Bard's IVC filters to their loved ones demonstrates that Bard's employees did not believe that Bard's filters were dangerous. The anecdotal evidence is highly relevant to Bard's defense.

Plaintiff has not even attempted to overcome the presumption in favor of admission of relevant evidence. She has not and cannot point to what unfair prejudice she will suffer by allowing witnesses to fully and completely explain the motivations behind the acts taken with respect to the Filter, especially in light of the fact that Plaintiff has put the witnesses' motivation at issue.

Furthermore, there is little chance of confusing the jury because such anecdotal testimony regarding witnesses' personal experiences with thrombus, PE, or Bard's IVC filters is not offered to suggest a medical similarity to the Plaintiff. Instead, it is offered only to negate the Plaintiff's attack on the witnesses' conduct and credibility. Any potential jury confusion could easily be addressed by informing the jury that all patients are unique, there are generally different IVC filters, and a filter may serve different purposes in different patients.

Finally, if Plaintiff is allowed to offer evidence, testimony, reference, or argument concerning Bard's corporate intent, motivations, or ethics, then Bard must be allowed to offer evidence to defend against such allegations, including company employees' personal experiences with the medical conditions and IVC filters at issue.

Personal experience of a witness is directly relevant to their intent, motivation, and ethics. Plaintiff's Motion to exclude anecdotal evidence should be DENIED.

## 4. EVIDENCE OF GOOD CHARACTER OR ACTS[4]

Plaintiff will likely attempt to argue that Bard's actions constituted "bad" intent, motivations, or ethics to show "negligence."[5] To rebut Plaintiff's claims, Bard intends to introduce, *inter alia*, how Bard upholds its mission statement in designing and manufacturing medical devices that improve the quality of people's lives. Such evidence is directly relevant to Bard employees' conduct and intentions in the areas of research and development, product formulation, marketing efforts, product monitoring, and regulatory compliance. This is not character evidence; it is admissible evidence of Bard's corporate operations instituted and executed to meet and exceed its duties under the law. *See In re: Tylenol (Acetaminophen) Mktg.*, No. 2436, 2016 WL 3125427, at *11 (E.D. Pa. June 3, 2016) (allowing defendants to present evidence about their operations–aimed at improving the lives of consumers–to explain to the jury what steps were taken to meet their statutory and common law duties).

Even if this Court concludes that such evidence is character evidence, Plaintiff has placed at issue Bard's character, motive, and intent in support of her purported negligence claims, making the evidence Bard would introduce admissible character evidence. Evidence of other acts may be introduced if offered to prove "motive,

---

[4] Due to an apparent numbering error, Sections 4–7 here refer to Sections 3–6, respectively, in Plaintiff's Motion, which contains two sections numbered 3, but skips from 6 to 8.

[5] Section 4(b) of Plaintiff's Motion seeks to limit evidence that Bard is engaged in benevolent activities, such as providing scholarships or making charitable contributions. As to this limited section, the Parties have entered into a stipulation and this matter is moot. *See* [DE 112 at page 3, ¶ 3(B)].

opportunity, intent, preparation, plan, knowledge….” of a witness. Fed. R. Evid. 404(b)(2). Rule 404(b) “is inclusive, not exclusive, and emphasizes admissibility.” *Cherry*, 845 F. Supp. at 1525 (citation omitted). The Court must apply a two part test to determine whether such evidence is admissible under Rule 404(b)(2): first, it must determine that the evidence is relevant to an issue other than merely the party’s character, and second, the evidence must satisfy Rule 403’s requirement that its danger of unfair prejudice does not substantially outweigh its probative value. Fed. R. Evid. 404(b)(2). Both prongs are satisfied here.

First, by bringing her negligence claims, Plaintiff puts Bard’s employee culture, conduct, and credibility squarely at issue. *See e.g.,* [DE 125 at 2–7, 8–9, 28]. Bard must be allowed to offer evidence to defend against such allegations, which would necessarily include evidence of the conscientiousness of Bard’s employees and other “good deed” evidence regarding Bard’s motive or knowledge which would demonstrate Bard did not act “in total disregard for the health and safety” of the public. Accordingly, this evidence is highly relevant to both the Plaintiff’s claims and Bard’s defenses, satisfying the first prong of Rule 404(b) admissibility.

Second, there is no unfair prejudice in allowing witnesses to present a full picture of Bard’s corporate culture, especially when the Plaintiff has put Bard’s motivation and knowledge at issue. The jury is entitled to hear both sides of the Bard story, particularly when the evidence serves the important function of explaining Bard’s conduct. Plaintiff has not, and cannot, demonstrate any reason why this evidence would be unduly prejudicial or undermine judicial efficiency. But, if such

evidence were excluded, it would result in significant and undue prejudice to Bard.

Finally, in the alternative, the MDL Court denied these motions and noted it would draw appropriate lines on the basis of objections made during trial, and this Court should either deny or reserve ruling on these issues for the same reasons. MDL DE 10075 at pp. 3–4, § C (denying motion to exclude evidence and argument relating to benevolent activities such as charitable acts Bard provides to patients or society, Bard's "good character" in general, and the quality and intent of its workforce as a whole) and page 7, § I (denying motion to exclude argument or evidence of personal traits of Bard's current and former employees or other witnesses) (Feb. 15, 2018). This Order was entered in this case [DE 17-4] and applies here where this Court has already expressly adopted the MDL rulings. [DE 23 at ¶ 1]. Plaintiff's Motion to exclude evidence of Bard's good character or acts should be DENIED.

## 5. COLLATERAL SOURCES IN GENERAL AND THE USE OF PAYMENTS BY A THIRD PARTY TO PROVE EFFICACY

Plaintiff seeks a blanket prohibition against Bard making any reference suggesting or implying Plaintiff's treatment was covered by collateral sources. First, the collateral source rule only protects from disclosure sources of payment to prove liability or amount of damages. *See Joerg v. State Farm Mut. Auto. Ins. Co.*, 176 So. 3d 1247, 1255 (Fla. 2015). Moreover, in Florida evidence of collateral sources is also permissible if a plaintiff puts her financial status at issue. *Mendel v. Royal Caribbean Cruises, Ltd.*, No. 10-23398-CIV, 2011 WL 3439235, at *1 (S.D. Fla. Aug. 5, 2011) (citing *Santa Maria v. Metro–North Commuter R.R.,* 81 F.3d 265, 273 (2d Cir. 1996)

(collateral source evidence sometimes admissible). Thus, "whether evidence of collateral sources is admissible at trial should depend on Plaintiff's testimony on direct examination at trial." *Id.* Plaintiff's Motion to exclude evidence of collateral sources should be DENIED.

## 6. REFERENCES REGARDING ALLEGED COMPLAINT OR FAILURE RATES AND REGARDING THE MEDICAL COMMUNITY[6]

### I.    Evidence Regarding the Number of Complaints and Failure Rates of Bard's IVC Filters Is Relevant and Necessary to Bard's Defense

Plaintiff's argument that evidence regarding the number of complaints about IVC filters being unreliable, irrelevant, misleading, and confusing completely ignores the indisputable fact that Plaintiff's claims put both the safety and efficacy of Bard's Filter directly at issue in this case, as well as Bard's knowledge of purported complaints and adverse events related to Bard's filters. The number of complaints about IVC filters is relevant and probative to Plaintiff's design defect and warning claims. Indeed, *evidence of Bard's internally calculated reporting rates was admitted during every MDL bellwether trial under Rule 803(6) over the MDL plaintiff's hearsay and Rule 403 objections—the same objections Plaintiff raises here*.

Evidence of the number of complaints is directly relevant and necessary for Bard to rebut Plaintiff's design defect and failure to warn claims and should not be excluded because: (a) without information regarding the number of complaints and failure rates,

---

[6] Bard does not intend to offer evidence of the specific percentage of doctors who use IVC filters. Thus, this part of Plaintiff's motion should be denied as moot. However, if Plaintiff opens the door by introducing evidence or making reference that "very few" physicians use Bard's filters, or the Filter specifically, or that they are not widely used, such evidence would be relevant to rebut those references.

the jury cannot seek to adduce the utility of the filter as compared to the gravity and likelihood of injury, which they must know in order to weigh it against the risks in the use of IVC filters for purposes of Plaintiff's design defect claim and (b) the number of complaints and adverse events relating to its IVC filters is directly probative to whether the risks of harm associated with the product were reasonably foreseeable to Bard and not otherwise known to the physician.

Plaintiff asserts concerns regarding the reliability or quality of Bard's data. But reliability goes to the weight of the evidence, not admissibility and can be addressed in other ways such as cross examination. And Bard recognizes that its internal calculations simply reflect the rates of reported complications, and do not purport to reflect the actual complication rate with absolute certitude.

## II.    The Number of People Allegedly Implanted or Treated with IVC Filters and the Number of Units Sold is Relevant and Should not be Excluded.

Bard anticipates that Plaintiff will attempt to introduce product claims, adverse event reports ("AERs"), and Medical Device Reports ("MDRs") relating to the Filter or other IVC filter products (collectively "AER Evidence") in an attempt to establish that the product at issue here caused Plaintiff's alleged injuries. While Bard maintains this AER Evidence is not relevant for this purpose and should be excluded,[7] to the extent that Plaintiff is permitted to introduce this AER Evidence, it would be unduly prejudicial for the Court to then prohibit Bard from introducing evidence regarding the total number of people implanted, or the total number of IVC filters sold to put the

---

[7] *See* [DE 133 at 10–14].

number of complaints in context. This number is directly relevant to show the context of the AER Evidence, if admitted.

### III.    Bard's Sales Figures Are Relevant and Should Not Be Excluded.

Plaintiff wrongly asserts Bard's total product sales figures are not relevant and "pose a significant danger of confusing or unfairly prejudicing the jury" but fails to provide any explanation for how this evidence would be confusing to a jury or unfairly prejudicial. [DE 130 at 8–9]. Plaintiff's design defect claim requires Plaintiff to prove, *inter alia*, "a defect which renders the product unreasonably dangerous." *Liggett Grp., Inc. v. Davis*, 973 So. 2d 467, 475 (Fla. 4th DCA 2007). The total number of sales of Bard's Filter in relation to the number of complaints and adverse events is directly relevant and probative to the issue of whether the Filter was unreasonably dangerous.

### IV.    Any Reference as to what "All Physicians Know" Regarding Risks or Benefits of Procedures or Devices, DVT, or Similar Statements.

Bard does not intend to offer evidence about what *all* physicians allegedly know, but evidence of what a *reasonable physician* knows regarding the risks and benefits of procedures, filter devices, and deep vein thrombosis treatments is highly relevant in a case such as this one—where Plaintiff alleges Bard defectively designed the device and failed to give adequate warnings to a learned intermediary, the physician. In Florida, where the learned intermediary doctrine applies, "regardless of the sufficiency of the warning, where 'a learned intermediary has actual knowledge of the substance of the alleged warning and would have taken the same course of action even with the information the plaintiff contends should have been provided, courts typically

conclude that the learned intermediary doctrine applies or that the causal link is broken and the plaintiff cannot recover.'" *Id.* at 725 (quotation omitted). As such, the specific risks and benefits regarding the implanting and explanting procedures, filter devices, and deep vein thrombosis treatments is highly relevant as it directly reflects whether the physician knew of Plaintiff's alleged complications and whether it would have changed the physician's decision in their treatment of Plaintiff – a key issue in a failure to warn case. Plaintiff's Motion should be DENIED.

**7. EVIDENCE OF TRADE ASSOCIATIONS' OR ORGANIZATIONS' OPINIONS FOR THE PURPOSE OF SUPPORTING LEGAL THEORIES OR ACCEPTABLE RATES OF COMPLICATIONS NAD SAFETY PROFILES**

Plaintiff attempts to exclude relevant evidence relating to statements made by physician trade associations, such as the Society for Interventional Radiologists ("SIR") Guidelines,[8] on the ground that such "advocacy organizations" have not been qualified to offer expert opinion testimony and statements of such organizations are inadmissible hearsay. [DE 130 at 9–11].

First, statements of medical societies about IVC filters and reported complications with IVC filters, regardless of the truth of those statements, are relevant to the central issue of whether Plaintiff's Filter was too dangerous to be used by anyone, whether its warnings were adequate, whether its reported failure rates are within those accepted as reasonable by the medical community, and whether the

---

[8] *Quality Improvement Guidelines for Percutaneous Permanent Inferior Vena Cava Filter Placement for the Prevention of Pulmonary Embolism* published periodically since 2001 by the Society of Interventional Radiology ("SIR").

benefits of the device outweigh its risks. Indeed, one of Plaintiff's central claims in this case is that the Filter causes higher rates of complication than other IVC filters—including Bard's Simon Nitinol Filter ("SNF")—and, thus, Bard's actions in designing and warning for the Filter were not reasonable.

The evidence Plaintiff seeks to exclude is directly relevant to those claims. For example, the SIR Guidelines address reported rates of filter complications generally seen by physicians in medical literature. The SIR Guidelines further discuss the complications of fracture, tilt, migration, and penetration of the IVC, citing medical literature. The jury should be able to consider the evidence when deciding whether the Filter was allegedly too dangerous to be used by anyone and whether Bard's actions concerning the design and warnings for the Filter were reasonable, given that Bard's reported failure rates were well below those in the SIR Guidelines. This evidence is equally probative of the jury's balancing of the risk versus the utility of the Filter.

Second, numerous other courts, including the MDL court, have denied nearly identical motions filed by plaintiffs in litigation involving Bard's IVC filters. Critically, in the *Hyde* MDL bellwether case, the MDL court held that "[t]he SIR guidelines—created by the Society of Interventional Radiologists to inform the medical community regarding acceptable rates of risk in IVC filters—are relevant to the jury's determination of whether Bard's [Filter] was *reasonably safe*." MDL DE 12507 at p. 6; *see also* MDL DE 10258 at pp. 14–18, § H (in *Booker*, denying same motion as to statements from associations and other groups). These Orders were entered in this case [DE 17-15; DE 17-16] and these rulings apply here, as this Court has already expressly

14

adopted the MDL rulings. [DE 23 at ¶ 1].

Numerous other courts have followed this reasoning and denied nearly identical motions in other cases. *See, e.g., Peterson v. C. R. Bard, Inc.,* No. 3:19-cv-01701-MO, Civil Mins. at 1 (D. Or. Apr. 20, 2021) (DE 159); *Johnson v. C.R. Bard Inc.,* 2021 WL 2070448, at *9; *Ocasio v. Bard,* No. 8:13-CV-1962-CEH-AEP, 2021 WL 2787993, at *5 (M.D. Fla. July 5, 2021). For the same reasons, Plaintiff's Motion should be DENIED.

## 8. REFERENCE TO THE NUMBER OF DOCUMENTS BARD HAS PRODUCED OR THE NUMBER OF CURRENT AND/OR FORMER EMPLOYEES THAT BARD HAS PRODUCED FOR DEPOSITION

Bard anticipates Plaintiff may attempt to introduce argument or evidence at trial that Bard withheld documents and information from its salesforce and, as a result, physicians. To the extent Plaintiff attempts to introduce such evidence and to combat Plaintiff's claims, Bard must be able to counter this narrative by providing necessary context: the documents presented to witnesses are just a few out of millions of pages, and therefore, (1) are not documents the witness would have seen in the regular course of business, (2) are not representative of Bard's internal information, and (3) do not encompass the entirety of information provided to the salesforce or physicians alike.

In addition, Bard cannot challenge the sufficiency of the data upon which Plaintiff's experts base their opinions if Bard is precluded from establishing that, in developing their opinions in this case, the Plaintiff's experts failed to review—or were prevented from reviewing—more than just a drop in the bucket of the information available to Plaintiff. *See* Fed. R. Evid. 705; *see, e.g., John v. Ripley (In re M&L Bus. Mach. Co.),* No. 94-K-2871, 1996 WL 391641, at *36 (D. Colo. 1996) (allowing probing of an

expert "for impeachment purposes to show that, in forming his opinions, [he] had not reviewed relevant information to which he had access in the course of his investigation"). The expert report of Dr. Allen, for example, illustrates the paucity of the Plaintiff's experts' record review in developing their opinions, which is representative of the trend among Plaintiff's experts, and demonstrates Bard's need to expose the same to the jury. *See* Exhibit A, Jan. 4, 2021 Robert P. Allen, M.D. Medicolegal Expert Report – List of Reliance Materials at 10–15 (identifying only 81 documents and depositions from the more than 8 million pages of Bard documents produced and more than 150 corporate witness depositions). Moreover, this background information will aid the jury in understanding the robust and complete review Bard's defense experts undertook in forming their opinions. *See* Fed. R. Evid. 401 (Advisory Committee Notes, 1972) ("Evidence which is essentially background in nature . . . is universally offered and admitted as an aid to understanding"). Therefore, such evidence is relevant to Bard's defenses. *See* Fed. R. Evid. 401 and 402.

Plaintiff has not identified any applicable exclusionary exception that would preclude the admission of this relevant evidence aside from an unfounded fear of prejudice because such evidence would "only imply that Plaintiff had somehow harassed Bard." [DE 130 at 11–12]. At a minimum, Plaintiff's Motion is premature. Wholesale exclusion of such evidence, at this pretrial stage without the benefit of understanding the context in which it might be presented at trial, is unwarranted. As explained above, Plaintiff may present evidence that opens the door to Bard's use of this evidence and the Court will be in a position to draw appropriate lines as needed

on the basis of the testimony presented and objections made during trial. Plaintiff's

Motion should be DENIED.

## 9. ANY REFERENCE THAT PLAINTIFF OR PLAINTIFF'S WITNESSES HAVE BEEN ACCUSED OR FOUND GUILTY OF ALLEGED MISCONDUCT OR CRIME

Plaintiff requests this Court exclude references to misconduct or crimes

committed by herself or her witnesses. This motion lacks specificity and should also

be denied for being impermissibly broad and vague. *Viada v. Osaka Health Spa, Inc.*,

No. 04 CIV. 2744-VMKNF, 2005 WL 3435111, at *1 (S.D.N.Y. Dec. 12, 2005)

(denying motion *in limine* for being overly vague in seeking to exclude all evidence

"defendants believe[d]" to be "the product of [stolen] material"). Plaintiff provides no

specific convictions or conduct she seeks to exclude.[9] She also provides no explanation

as to how she defines the terms "accused" and "misconduct," which are susceptible to

varied interpretations. *See Ocasio v. Bard*, 2021 WL 2787993, at *6 (M.D. Fla. July 5,

2021) (denying plaintiffs' motion *in limine* to exclude this evidence). Impeachment by

evidence of a criminal conviction is governed by Fed. R. Evid. 609, which should

control here, not a blanket ruling vaguely prohibiting any reference to any

"misconduct." Plaintiff's Motion should be DENIED.

## 10. ANY SUGGESTION THAT MS. WORKMASTER'S FILTER CAUGHT OR STOPPED A CLOT AND SAVED HER LIFE

Plaintiff requests this Court exclude relevant evidence, testimony, and argument

---

[9] Assuming prior convictions do exist, the details and context will be of paramount importance in the Court's determination of whether they should be permitted into evidence . Should, for instance, Bard learn that Plaintiffs were convicted of perjury, such convictions clearly would be admissible.

relating to any suggestion her filter ever stopped a clot of any kind. First, Bard's expert,

Dr. Kim is entitled to testify that Plaintiff's Filter worked as intended and is life-saving.

Plaintiff's Filter was implanted for the express "purpose" of preventing blood clots

from traveling to her lung. [DE 122-1 at 36:21–37:3]. Based on his training, experience,

and knowledge as a board-certified diagnostic and interventional radiologist, as well

as his review of Plaintiff's medical records, Dr. Kim opines that the "IVC filter was

inserted for an appropriate indication during the procedure for resolving the clot that

had developed in Ms. Workmaster's leg and pelvic veins." [DE 58-1 Ex. H at 21]. He

states "it is notable that Ms. Workmaster eventually underwent knee replacement and

mastectomy, both of which would require cessation of her anticoagulation, and

insertion of a new IVC filter would have been appropriate to mitigate risk of deep

venous thrombosis and pulmonary embolism in the perioperative periods." *Id.* at 16.

Because this evidence is relevant to Bard's defenses to Plaintiff's design defect claims,

Bard must be able to tell the jury about the Filter's benefits through appropriate expert

testimony and other admissible evidence, including Plaintiff's medical records,

consistent with other courts' rulings. *See Keen v. Bard*, 480 F.Supp.3d at 652 (denying

motion to exclude evidence of Filters as "lifesaving devices," noting "the filter's ability

to save lives is relevant in that it provides the jury with the necessary context about the

nature of the product"); *see also Johnson v. Bard*, 2021 WL 2070448, at *8 (same).

Second, to the extent Plaintiff argues that Dr. Kim's opinions regarding the

safety and efficacy of the Filter are "anecdotal" and an "unsupported and inadmissible

opinion" [DE 130 at 13], the MDL court rejected that argument three years ago. MDL

DE 10230 (rejecting argument that expert's opinions are "anecdotal" as "[t]estimony about a doctor's own clinical experiences is not based on mere speculation[,]" and holding that defense expert "may rely on his own clinical experience in stating his opinions, just as Plaintiffs' experts are allowed to do"); *see also In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Prod. Liab. Litig.*, No. 18-CV-01509, 2020 WL 6605612, at *13 (S.D. Ohio Sept. 11, 2020) (it is "well-established that experience-based testimony satisfies Rule 702 admissibility requirements"). The MDL Order was entered in this case [DE 11-13] and expressly adopted by this Court. [DE 23 at ¶ 1].

Plaintiff claims testimony that her Filter stopped a clot is speculative "unless monitored with a scan in real time as it happens," is based on testimony from Janet Hudnall,[10] a Bard Senior Marketing Manager. However, Ms. Hudnall's transcript does not support Plaintiff's position and is taken entirely out of context. Ms. Hudnall also testified, conveniently omitted by Plaintiff, unequivocally that "IVC filter[s] is the best option for preventing fatal pulmonary embolism" and the sole expectation for IVC filters is "to prevent fatal pulmonary emboli." (Ex. B, Hudnall Dep. Tr. at 253:6-16; 118:3-7; 85:19-20.) Ms. Hudnall also explicitly affirms Bard's position that IVC Filters are lifesaving devices. *Id.* Dr. Kim's opinions are entirely consistent with this testimony and admissible. Plaintiff's Motion should be DENIED.

## 11. REFERENCES TO THE NEGLIGENCE OR FAULT OF NON-PARTIES INCLUDING HEALTHCARE PROVIDERS

---

[10] True and correct copies of excerpts of Janet Hudnall's Deposition Transcript dated November 1, 2013 are attached hereto as Exhibit B.

Plaintiff asks this Court to prohibit Bard from referring to the fault or negligence of any non-party not identified in Bard's Amended Answer and pre-trial disclosures or any reference to, or suggestion of an adverse inference from, the fact that Plaintiff did not sue all potential parties (i.e., an "empty chair defense"). Plaintiff relies on *Fabre v. Marin*, 623 So. 2d 1182 (Fla. 1993) and *Nash v. Wells Fargo Guard Service, Inc.*, 678 So. 2d 1262), which pertain to listing non-parties **on the verdict form** (not at issue here), and asks this Court to ignore that under Florida law, a defendant is allowed to present "an 'empty chair' defense," and "'point to an empty chair' by arguing that 'a non-party is responsible for the plaintiff's injuries.'" *Bd. of Trustees of Univ. of S. Fla. v. Carter*, 298 So. 3d 94, 98 (Fla. 2d DCA 2020), *reh'g denied* (July 9, 2020), *review denied,* No. SC20-1161, 2020 WL 6581787 (Fla. Nov. 10, 2020) (quoting *Vila v. Philip Morris USA Inc.*, 215 So. 3d 82, 85 (Fla. 3d DCA 2016); *Black v. Montgomery Elevator Co.*, 581 So. 2d 624, 625 (Fla. 5th DCA 1991)). In Florida, "[t]o present an 'empty chair' defense, ***the defendant need only answer the complaint with a general denial and argue to the jury that the injury was due to the negligence of a non-party to the suit***." *Id.* (quoting *Vila*, 215 So. 3d at 85) (emphasis added). "[U]nlike a *Fabre* defendant, this non-party is not placed on the verdict form and there is no apportionment of fault." *Id.* (quoting *Vucinich v. Ross*, 893 So. 2d 690, 694 (Fla. 5th DCA 2005); *Phillips v. Guarneri*, 785 So. 2d 705, 707 n.4 (Fla. 4th DCA 2001)); *see also Loureiro v. Pools By Greg, Inc.*, 698 So. 2d 1262, 1264 (Fla. 4th DCA 1997) ("Even had the issue of non-party liability been omitted from the instructions and the verdict form, Pools could still have contended at trial that it was

not negligent and that the negligence of others was the sole legal cause of injury.")).

Here, as in *Carter* and the cases cited therein, Bard has answered the complaint with a general denial, *see* [DE 13-6], and is allowed to argue to the jury that Plaintiff's purported injuries, if any, are due to the negligence of a non-party to the suit, presenting an empty chair defense. Plaintiff's Motion should be DENIED.

## 12. THE SURGEON GENERAL'S "CALL TO ACTION"

Plaintiff requests this Court exclude relevant evidence, testimony, and argument relating to the Surgeon General's Call to Action,[11] including (a) what Plaintiff characterizes as "anecdotal instances in the 'Surgeon General's Call to Action' of individuals suffering from pulmonary embolism, clots or thrombosis;" (b) references to the risks of DVT and/or PE in individuals with health conditions Plaintiff does not have; and (c) any reference, suggestion, or argument that the Surgeon General approved of or endorsed the Filter or Bard's conduct in its development and design.

Plaintiff's Motion should be denied because the Surgeon General's Call to Action report is relevant to the jury's consideration of Florida's design defect analysis, and admissible under the public records hearsay exception. The Surgeon General's Call to Action has been admitted in the MDL bellwether trials, with courts summarily rejecting Plaintiff's same arguments. The MDL Court considered all of Plaintiff's identical arguments in the MDL and determined that the report (1) "is relevant to the risk-benefit analysis because it explains the benefits of IVC filters," (2) would not

---

[11]  A true and correct copy of the *Surgeon General's Call to Action to Prevent Deep Vein Thrombosis and Pulmonary Embolism* was attached as Exhibit 8 to [DE 130].

"confuse the jury or unfairly prejudice Plaintiffs" and (3) "falls within the public records hearsay exception." MDL DE 12533.[12] This Order was entered in this case on October 24, 2019, and has been expressly adopted. [DE 23 at ¶ 1]. This Court should similarly deny Plaintiff's Motion in this case.

Plaintiff also fails to present any legitimate prejudice arising from Bard's limited use of the Call to Action in this case. Instead, Plaintiff conclusorily contends it is "unfair" to allow Bard to "buttress factual contentions about safety by 'using the imprimatur of the Surgeon General of the United States,'" citing *Philip Morris USA v. Pollari*, 228 So. 3d 115, 130 (Fla. 4th DCA 2017), a state court case based on Florida's Evidence Code which held Surgeon General Reports about tobacco inadmissible. *Id.* at 123 (recognizing that "***while such records may be admissible under the rules of the federal court system, they are clearly inadmissible under the Florida Evidence Code***").

Here, however, the Federal Rules of Evidence apply. *ML Healthcare Servs., LLC v. Publix Super Markets, Inc.*, 881 F.3d 1293, 1299 (11th Cir. 2018) ("In federal diversity actions, state law governs substantive issues, but federal law governs procedural issues. . . . "Rules of procedure encompass rules of evidence, and therefore, the Federal Rules of Evidence, not state evidentiary rules, apply" to evidentiary disputes in a federal diversity action.) Under the Federal Rules, this evidence is admissible under the public records exception to the hearsay rule and is not being offered for the truth of the matter

---

[12] This order is from the third MDL bellwether case *Hyde v. C. R. Bard, Inc., et al*. Plaintiff's motion also acknowledges that the Surgeon General's Call to Action was admitted in the first two bellwether trials, *Booker* and *Jones*. [DE 130 at 16–17].

asserted, but rather as evidence of notice to the medical community. *Ocasio v. Bard*, 2021 WL 2787993, at *7 (M.D. Fla. July 5, 2021) (denying motion *in limine* to exclude this evidence, as it "is a trustworthy public record that likely falls within an exception to the hearsay rule," and "is relevant to the availability of treatment options and the risk/benefit analysis"). Plaintiff's Motion should be DENIED.

## 13. FDA EVIDENCE ON 510(K) CLEARANCE AND LACK OF ENFORCEMENT ACTION

Plaintiff requests this Court exclude evidence of the FDA's 510(k) clearance of Bard IVC filters and the lack of enforcement action against Bard. Plaintiff's request asks this Court to completely disregard rulings from the MDL, which have already been adopted here, *see* [DE 23 at ¶ 1], and apply distinguishable precedent, which was recently rejected in this District.

First, the MDL Court expressly denied multiple iterations of this motion, and this Court should deny this motion for the same reasons. *See* MDL DE 10323 (CMO at pp. 2–3, ¶ 11(a)) (Mar. 3, 2018); MDL DE 9881 (in *Booker*, denying motion to exclude reference to FDA 510(k) clearance and lack of FDA enforcement) (Jan. 29, 2018); MDL DE 12533 (in *Hyde*, denying motion to exclude reference to FDA 510(k) clearance and lack of FDA enforcement) (Sep. 7, 2018). These Orders were entered in this case in October 2019 [DE 10-39; DE 17-3; DE 7-16] and should apply here, as this Court has already expressly adopted the MDL rulings. [DE 23 at ¶ 1]; *see also Keen v. C. R. Bard, Inc.*, No. 13-5361, 480 F.Supp.3d 646 at 650–51 (E.D. Pa. 2020) (denying motion as to FDA's 510(k) clearance of G2 line of filters and FDA enforcement data).

Second, the Eleventh Circuit in *Eghnayem* addressed a different product and a far less robust regulatory record. *Ocasio v. Bard*, 2021 WL 2787993, at *4 (M.D. Fla. July 5, 2021). In *Ocasio*, a Court in this District recently ruled, on the same issue, that "the Court is inclined to find the evidence and testimony related to the 510(k) process to be relevant and not unduly prejudicial, but until the Court hears the testimony at trial, it is unable to determine at this juncture the relevancy to the remaining issue of design defect," and thus deferred ruling on the motion *in limine* until trial. *Id.*

Here, as in the MDL, among other things, "evidence of Bard's compliance with the 510(k) process" is "relevant to the [Plaintiff's] design defect claims"; any concerns about FDA evidence misleading the jury "could adequately be addressed by efficient management of the evidence" and, "if necessary, by a limiting instruction"[13]; and "the absence of any evidence regarding the 510(k) process would run the risk of confusing the jury, as many of the relevant events in this litigation occurred in the context of the FDA's 510(k) review and are best understood in that context." [DE 3 at 21–22]. Evidence and arguments "that the FDA took no enforcement action against Bard" with respect to the Filter, or "evidence regarding information Bard provided to the FDA in connection with the 510(k) process" are likewise "relevant to the negligent design and punitive damages claims," and there is "no basis to concluded that the FDA's lack of enforcement was intended by the FDA as an assertion," and thus should not be excluded as hearsay. *See id.* at 22. Plaintiff's Motion should be DENIED.

---

[13] Still, the MDL Court did not find a limiting instruction necessary at the close of either the *Booker* or *Jones* trials. *See* [DE 3 at page 21, n.5].

## 14. STATEMENTS REGARDING A "DISPUTE" AS TO WHETHER THE DEVICE IS A G2 FILTER OR G2X FILTER

Bard's position is the filter is a G2 Express. And, Bard does not agree that it should be precluded from introducing evidence that Plaintiff—and her treating physicians in her medical records—initially identified the Filter as a G2, in particular to provide context as to why discovery was initially conducted regarding the G2. Plaintiff makes no meaningful effort to explain how her and her treating physician's initial misidentification of the device are not relevant or how this evidence—indeed, Plaintiff's own allegations at the outset of this suit—could be *unfairly* prejudicial. There are none.  Plaintiff's Motion should be DENIED.

Dated:  July 12, 2021

Respectfully submitted,

*/s/ Lori G. Cohen*
LORI GAIL COHEN
*Admitted Pro Hac Vice*
**GREENBERG TRAURIG, LLP**
cohenl@gtlaw.com
Terminus 200, Ste. 2500
3333 Piedmont Rd, NE
Atlanta, Georgia 30305
Tel. (678) 553-7324
Fax (678) 553-7325

*/s/ Mark F. Bideau*
MARK F. BIDEAU
Florida Bar No. 564044
mbideau@gtlaw.com
JASON H. OKLESHEN
Florida Bar No. 496170
okleshenj@gtlaw.com
SABRINA R. GALLO
Florida Bar No. 419273
gallos@gtlaw.com
**GREENBERG TRAURIG, P.A.**
777 S. Flagler Drive, Suite 300 East
West Palm Beach, Florida 33401
Telephone: (561) 650-7949
Facsimile: (561) 655-6222

*Counsel for Defendants C. R. Bard, Inc. and Bard Peripheral Vascular, Inc*